UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YEHUDA V. SCHWARTZ,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF<br>HOMELAND SECURITY, *et al.*,<br><br>    Defendants. | Civil Action No. 21-378 (JEB) |

**MEMORANDUM OPINION**

Plaintiff Yehuda Schwartz, a U.S. citizen, wishes to bring his fiancée, Kim Hazel Valenzuela Arafiles, to the United States. In January 2020, Schwartz filed an I-129 form to initiate the process of obtaining a visa that would allow Arafiles, who currently lives in the Philippines, to enter the U.S. and marry him. The visa that the couple seeks remains in limbo, however, given delays caused by the COVID-19 pandemic. Hoping to expedite the process and obtain a decision on Arafiles's visa, Schwartz filed this lawsuit against multiple Government Defendants. He alleges that the delay in adjudicating the visa petition constitutes a violation of the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, and the Constitution's Due Process Clause. Defendants now move to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As the Court concludes that Schwartz is entitled to no relief here, it will grant the Motion.

1

**I.      Background**

   A.  Legal Background

The Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, provides that U.S. citizens who wish to bring their foreign fiancé(e)s to this country must first file a Form I-129F petition for a non-immigrant fiancé(e) visa with the United States Customs and Immigration Services. See 8 U.S.C. §§ 1101(a)(15)(K), 1184(d); 8 C.F.R. § 214.2(k)(1); see also U.S. Department of Homeland Security, Visas for Fiancé(e)s of U.S. Citizens (March 23, 2018), https://bit.ly/35j9Jup (USCIS Fiancé(e) Visa Information). If USCIS approves the petition, the application is sent to the Department of State's National Visa Center (NVC). See USCIS Fiancé(e) Visa Information; see also U.S. Department of State — Bureau of Consular Affairs, Nonimmigrant Visa for a Fiancé(e) (K-1) (last visited Aug. 23, 2021), https://bit.ly/3n6Qmug (State Department Fiancé(e) Visa Information). The NVC then assigns a case number and sends the petition to the U.S. embassy or consulate where the foreign-national fiancé(e) lives. See State Department Fiancé(e) Visa Information. Processing of the petition is completed at the local consulate or embassy and requires the foreign-national fiancé(e) to submit, among other things, an Online Nonimmigrant Visa Application and documentation of the relationship, and to undergo an interview with a consular officer. Id. After the interview, the consular officer determines whether to issue the visa, which allows the foreign-national fiancé(e) "to travel to [a] U.S. port of entry and request permission to enter the United States." Id. If the foreign-national fiancé(e) is admitted to the United States, she has 90 days to marry her U.S.-citizen fiancé(e), after which she may apply for a Green Card. See USCIS Fiancé(e) Visa Information.

B.  Factual History

Schwartz has followed this protocol.  He filed an I-129F petition on January 21, 2020, and USCIS approved the petition on July 9 of that year.  See ECF No. 1 (Complaint), ¶¶ 17, 19.  Plaintiff alleges that the approved petition was never sent to the NVC, id., ¶ 20, though Defendants note that the Department of State's visa-tracking system indicates that the petition is currently sitting at the NVC.  See ECF No. 9 (Def. MTD) at 2.  In any event, no interview with a consular officer has been scheduled, and the agency has not issued a decision on Schwartz's petition.  See Compl., ¶ 21.

Schwartz unfortunately filed at an unpropitious time.  In response to the COVID-19 pandemic that swept the globe shortly after he filed, the State Department suspended visa services at all U.S. embassies and consulates.  See U.S. Department of State — Bureau of Consular Affairs, Suspension of Routine Visa Services (July 22, 2020), https://bit.ly/2WjdDRA.  Several months later, State initiated a "phased resumption" of services, whereby embassies and consulates were to resume routine services "as local conditions and resources allow."  Id.  The visa services available at U.S. embassies and consulates currently differ by location, depending on conditions in the area.  See U.S. Department of State — Bureau of Consular Affairs, Visa Services Operating Status Update (April 6, 2021), https://bit.ly/3gquvNH.  In Manila, Philippines, where Arafiles lives, routine services are still suspended.  See U.S. Embassy in the Philippines, Visas (last visited Sept. 9, 2021), https://bit.ly/3hkt1oB.

After repeated attempts to push the consulate to issue a decision, Plaintiff filed this suit in February 2021, just over a year after he had submitted the initial visa petition.  He named as Defendants multiple U.S. agencies — namely, the Department of Homeland Security, United States Citizenship and Immigration Services, the Department of State, and the U.S. Consulate in

Manila — and the heads of those entities. See Compl. at 1. He alleges that Defendants' delay in issuing the visa decision violates the APA and the Due Process Clause. Id., ¶¶ 23–35. As relief, Schwartz requests that this Court: (1) issue a writ of mandamus compelling Defendants to conduct Arafiles's interview, complete processing of the visa petition within 60 days, issue a visa to her, and explain the delay, and (2) (presumably in the alternative) take jurisdiction and adjudicate the petition pursuant to the Court's declaratory-judgment authority. Id. at 7–8. Defendants now move to dismiss.

## II.     Legal Standard

Defendants' Motion invokes the legal standards for dismissal under Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim upon which relief can be granted." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 552 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Although a plaintiff may survive a Rule 12(b)(6) motion even if "'recovery is very remote and unlikely,'" the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555–56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

## III.    Analysis

In moving to dismiss, Defendants maintain that Plaintiff has failed to state a cognizable claim under either the APA or the Constitution. They also urge the Court to dismiss claims against officials from DHS and USCIS for lack of jurisdiction under Federal Rule of Civil

Procedure 12(b)(1) because those officials cannot provide the relief Schwartz requests. See MTD at 5–6. As the Court agrees with their first argument, it need not address the second.

### A. APA Claim

Schwartz alleges that Defendants' delay in processing his fiancée's visa violates the APA's requirement that agencies "conclude" matters presented to them "within a reasonable time." 5 U.S.C. § 555(b); see also Compl., ¶ 24. When an agency fails to comply with this requirement, the APA authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); Bagherian v. Pompeo, 442 F. Supp. 3d 87, 93 (D.D.C. 2020).

To assess whether this delay is unreasonable, the Court turns to the familiar six-factor inquiry set out in Telecommunications Research & Action Center v. FCC (TRAC), 750 F.2d 70, 80 (D.C. Cir. 1984):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Milligan v. Pompeo, 502 F. Supp. 3d 302, 317 (D.D.C. 2020) (quoting TRAC, 750 F.2d at 80); see also Sarlak v. Pompeo, No. 20-35, 2020 WL 3082018, at *5 (D.D.C. June 10, 2020)

(applying TRAC factors at motion-to-dismiss stage and collecting cases). These factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'" In re Core Communications, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting TRAC, 750 F.2d at 80).

The first two factors — which ask whether Congress set a timeline for completion of the action and whether the agency's actions are governed by a rule of reason — are typically considered together and favor Defendants here. Congress has given the State Department wide discretion in processing immigration visas and has set no statutory deadline for adjudicating K-1 visas. See Milligan, 502 F. Supp. 3d at 318. "Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." Sarlak, 2020 WL 3082018, at *6. While there is no bright-line rule, "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." Id. (citation omitted) (collecting cases). Indeed, many courts have "declined to find a two-year period to be unreasonable as a matter of law." Ghadami v. U.S. Department of Homeland Security, No. 19-397, 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) (collecting cases); see also Skalka v. Kelly, 246 F. Supp. 3d 147, 154 (D.D.C. 2017) (noting that two-year delay in processing immigration visa "does not typically require judicial intervention").

The length of the delay Plaintiff has experienced, while no doubt frustrating, does not approach the two- or five-year periods district courts have countenanced. Schwartz nonetheless argues this 19-month interval warrants intervention, pointing to one out-of-circuit district-court decision that found a 9-month delay unreasonable. See ECF No. 10 (Pl. Opp.) at 10–11 (citing American Academy of Religion v. Chertoff, 463 F. Supp. 2d 400, 420–22 (S.D.N.Y. 2006)). That case, however, like the others Plaintiff cites as finding two- or four-year delays not unreasonable,

id., predated the COVID-19 pandemic, which has contributed heavily to the slowdowns in visa processing all over the world.  This Court, moreover, just last week held that 18-month delays in processing K-1 fiancé(e) visa petitions, the same type of petition at issue here, were not unreasonable in the context of the COVID-19 pandemic.  See Milligan v. Blinken, No. 20-2631, 2021 WL 3931880, at *7–9 (D.D.C. Sept. 2, 2021).  Given that courts have found delays longer than the one Schwartz has experienced to be reasonable under normal circumstances, the Court finds no basis to conclude that the State Department's timeline for processing Plaintiff's fiancée's K-1 visa in the midst of a global pandemic lacks reason.

The third and fifth TRAC factors, in contrast, favor Schwartz.  Both consider the effects of the delay: the third assesses whether "human health and welfare are at stake" such that judicial intervention is more justified, and the fifth evaluates the "nature and extent of the interests prejudiced by delay."  TRAC, 750 F.2d at 80.  Although Plaintiff does not identify specific harms caused by the delay, the Court assumes that it has had a significant negative impact on his welfare by forcing him "'to endure a prolonged and indefinite separation' from [his] fiancé(e)[]."  Milligan, 502 F. Supp. 3d at 319 (quoting Didban v. Pompeo, 435 F. Supp. 3d 168, 177 (D.D.C. 2020)).  Even acknowledging that the State Department's delay results at least in part from its concern for the health and welfare of its workforce, the Court concludes that Plaintiff faces significant consequences without intervention.

The fourth TRAC factor, which evaluates the impact of expediting the delayed action on other agency priorities, tips toward the Government.  This factor carries great weight, and, "where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain," the D.C. Circuit has found intervention unwarranted — even when all the other TRAC factors pointed towards relief.  Mashpee

7

Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (alteration omitted) (quoting In re Barr Laboratories, Inc., 930 F.2d 72, 75 (D.C. Cir. 1991)). Judicial intervention would create just that scenario here.

Plaintiff does not dispute that State is experiencing a backlog of visa petitions resulting from the COVID-19 pandemic, see Def. MTD at 3–4; Pl. Opp. at 12, but contends that he should not have to bear the burden of this backlog, again citing out-of-circuit and pre-COVID-19 cases. See Pl. Opp. at 12. Courts in this district, however, have recognized that they step "outside [their] limited role in these cases" when they order agencies to devote resources to one visa petition "while others would suffer in response." Skalka, 246 F. Supp. 3d at 154; see also Tate v. Pompeo, 513 F. Supp. 3d 132, 149–50 (D.D.C. 2021). This Court, accordingly, has found that the fourth TRAC factor weighs heavily in the Government's favor in the context of similar requests for relief during the pandemic. See Milligan, 502 F. Supp. 3d at 319; Zandieh v. Pompeo, No. 20-919, 2020 WL 4346915, at *6 (D.D.C. July 29, 2020). It reaches the same conclusion here.

The sixth and final TRAC factor is a wash. A court need not find any impropriety in an agency's inaction to deem a delay unreasonable, and so Plaintiff's "lack of those allegations does not count against [him] here." Ghadami, 2020 WL 1308376, at *9.

Considering all these factors together, the Court concludes that Plaintiff has not stated an unreasonable-delay claim under the APA. See Sarlak, 2020 WL 3082018, at *6 (collecting cases reaching same conclusion). It recognizes that Schwartz has faced an ordeal in being separated indefinitely from his fiancée but concludes that the Government's "interests in balancing its own priorities" and in carefully managing the COVID-19 pandemic outweigh Schwartz's interest in receiving an immediate resolution of his fiancée's visa petition. See Bagherian, 442 F. Supp. 3d

8

at 96.  Plaintiff's request for mandamus relief is rejected for the same reason.  See Didban, 435 F. Supp. 3d at 177 (citing Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 63–64 (2004)).

    B.  Constitutional Claim

Exploring any avenue to relief, Schwartz also asserts that the State Department's delay violates his right to due process under the Fifth Amendment.  See Compl., ¶¶ 33–35; Pl. Opp. at 13–15.  As Defendants note, it is not clear precisely what version of a due-process claim Plaintiff seeks to bring, see MTD at 13, but a necessary component is a protected "liberty or property interest of which plaintiff has been deprived," Ghadami, 2020 WL 1308376, at *10 (quoting Swarthout v. Cooke, 562 U.S. 216, 219 (2011)), and so the Court begins there.  Schwartz alleges that the delay has caused him a "loss of consortium," which the Court interprets as an argument that he has been deprived of a protected interest in living in the United States with his fiancée.  See Compl., ¶ 35; Pl. Opp. at 14.

Courts in this district have held, however, that "it is well settled that a citizen spouse has no constitutional right to have his or her alien spouse enter or remain in the United States." Escobar v. INS, 700 F. Supp. 609, 612 (D.D.C. 1988) (collecting cases).  This is so even though "[t]he Constitution certainly protects an individual's right to marry and the marital relationship," Jathoul v. Clinton, 880 F. Supp. 2d 168, 171 (D.D.C. 2012) (quoting Udugampola v. Jacobs, 795 F. Supp. 2d 96, 105 (D.D.C. 2011)), because an individual's interest in the martial relationship is distinct from his interest in living in the United States with his spouse.  See Zandieh, 2020 WL 4346915, at *7. Although separation "would put burdens upon the marriage[,] . . . [it] would not in any way destroy the legal union which the marriage created."  Mostofi v. Napolitano, 841 F. Supp. 2d 208, 212 (D.D.C. 2012) (quoting Swartz v. Rogers, 254 F.3d 338, 339 (D.C. Cir.

9

1958)).  The Government, therefore, does "not violate[] any constitutionally protected right" when it denies entry of a foreign spouse, Singh v. Tillerson, 271 F. Supp. 3d 64, 72 (D.D.C. 2017), or when it delays adjudication of a visa application.  Zandieh, 2020 WL 4346915, at *7–8.  Plaintiff's citations to Ninth Circuit precedent do not compel a different conclusion, as the Court is bound by the D.C. Circuit's decision in Swartz.  See Pl. Opp. at 14; Zandieh, 2020 WL 4346915, at *7–8 (declining to follow Bustamante v. Mukasey, 531 F.3d 1059 (9th Cir. 2008), in finding delayed visa adjudication did not implicate due-process rights).

If these cases cover spouses, their holdings plainly apply to fiancé(e) relationships as well, which are not protected to the same extent in the law.  Denying or delaying a K-1 fiancé(e) visa similarly imposes "the choice of living abroad with [one's fiancé] or living in this country without him."  Swartz, 254 F.2d at 339.  As the imposition of this choice violates no constitutional rights in the marital context, the Court concludes that it cannot do so in the fiancé(e) context either.  Schwartz has thus stated no cognizable claim under the Constitution.

## IV.  Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss.  A separate Order will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: September 10, 2021